**FILED**

**April 4, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**TIME 10:26 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Kenneth M. Swain, | ) | Docket No.: 2015-06-0415 |
| Employee, | ) | |
| v. | ) | State File No.: 48203-2015 |
| Standard Candy Company, | ) | |
| Employer, | ) | Chief Judge Kenneth M. Switzer |
| And | ) | |
| The Hartford, | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This case came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Kenneth M. Swain, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Swain sustained a compensable work-related injury while employed by Standard Candy Company. For the reasons set forth below, the Court finds Mr. Swain is entitled to a panel of physicians, but is not entitled to past medical expense reimbursement or past temporary disability benefits.[1]

### History of Claim

Mr. Swain is a sixty-four-year-old resident of Davidson County, Tennessee. (T.R. 1 at 1.) He worked at Standard as a maintenance mechanic technician. *Id.*

While at work on January 7, 2015, at approximately 10:45 p.m., Mr. Swain slipped in an oil/water mixture and fell backward on to the floor. Video surveillance captured the fall. (Ex. 6.) Standard does not dispute the fall occurred; rather, it disputes whether Mr. Swain sustained an injury. Mr. Swain allegedly incurred injuries to the left side of his body, including his left knee, elbow, back and head.[2] (T.R. 1 at 1.)

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] Mr. Swain testified at the expedited hearing that injuries to his head and lower back resolved and withdrew claims of work-related injury to these areas.

1

The parties presented differing versions of the critical conversations that took place in the hours after the fall. For his part, Mr. Swain testified that after the fall he immediately told his supervisor, Steven Reeder, that:

> [I] slipped and fell on the floor, and um, um, I hurt my knee, you know, and I -- when I fell I hurt my elbow, which pushed up [and] hurt my shoulder at the same time. But, because I've been—I played sports, which was twenty to thirty years before, which I hadn't taken into account for twenty or thirty years, I said, "It may clear up, but I do want to make a report of this."

On cross-examination, Mr. Swain denied telling Mr. Reeder he was unhurt from the fall, but rather stated he told Mr. Reeder he felt a "zing" go through him, similar to the feeling of getting hit while playing sports. According to Mr. Swain, Mr. Reeder asked him if he wanted to make out a report, and he responded that he wanted to think about it. He then went to the locker room to change clothes because they were wet from falling in liquid. Shortly afterward in the locker room, Mr. Reeder informed Mr. Swain he had to complete an accident report[3] and undergo a drug test. Mr. Swain maintained he did not request, nor did Standard offer, medical treatment, even though he reported the injuries.

Mr. Reeder confirmed he spoke to Mr. Swain immediately after the fall, but denied Mr. Swain said he was hurt from the fall or specifically that he hurt his knee. Mr. Swain did not appear to Mr. Reeder to be injured from the fall. According to Mr. Reeder, Mr. Swain spoke to him after the fall merely to report the presence of water on the floor and to inform him that he fell.

The First Report of Injury, completed on July 7, 2015, by Standard's safety manager, John Kessler, stated Mr. Swain fell, but "declined any offsite medical treatment." (Ex. 3.) Standard introduced an email from Mr. Reeder to Mr. Kessler written on January 8, 2015, at 12:04 a.m. to report the fall. (Ex. 9.) The email stated Mr. Swain "said he was not hurt." *Id.* During the hearing, Mr. Kessler testified company policy requires that "anytime an employee has an injury at work, ah, they are sent for a-a drug test. Um, it doesn't matter whether they want medical attention or not." Further, drug testing is immediate only if the employee asks for medical treatment, per Mr. Kessler. Standard presented no written policy confirming this testimony. Mr. Swain did not dispute the policy's existence.

---

[3] Standard introduced into evidence a one-page, untitled internal form it uses to document workplace accidents, dated January 7, 2015 and prepared by Mr. Reeder. (Ex. 8.) Instructions for the form indicate that it "does not take the place of *Employer's Report of Injury/Illness,* which is required by State and Federal Law." (Italics and capitalization in original.) However, as mentioned later on, Standard did not complete the state form until July 7, 2015. Standard's form asks if first aid was administered, to which Mr. Reeder wrote, "N/A (None requested)." Mr. Reeder checked the "Yes" box following the statement, "First aid only required, non-recordable injury." He checked the "No" box after "Medical treatment required/physician to indicate if injury recordable."

Pursuant to the above-mentioned policy, Mr. Swain reported to Concentra Medical Center for a drug test.[4] Testimony revealed he arrived on January 8, 2016, at approximately 7:15 a.m. and left at 7:25 a.m. Mr. Swain's urine sample was not within temperature range. The record from the visit was not admitted into evidence, although on cross-examination Mr. Swain read from the document at the request of Standard's counsel. Again, according to Mr. Kessler, based on company policy the "not within temperature range" reading is interpreted as a failed test and thus results in dismissal. Therefore, Standard's human resources staff terminated Mr. Swain.

Mr. Kessler testified he spoke with Mr. Swain upon his return from Concentra and they discussed the urinalysis results, but he denied that Mr. Swain said he injured his elbow or knee or that he needed medical treatment. Mr. Kessler further denied hearing from Mr. Swain at any time from January through May 2015 regarding injuries or a need for treatment. According to Mr. Kessler, he would be in the chain of contact if Mr. Swain had communicated with Standard regarding workplace injuries or a need for medical attention. Mr. Reeder likewise denied Mr. Swain ever called him after the termination or any other time to report a work injury and/or request medical treatment.

Following his dismissal, Mr. Swain's undisputed testimony is he treated his knee with ice and heat and achieved some relief, but the elbow pain worsened and it began to swell. He attempted to visit his primary care physician but was turned away due to past unpaid bills and because he did not have insurance or finances to pay for care. Mr. Swain contended he attempted to contact Standard three times, leaving messages each time, but no one returned his calls. He believed Standard's focus turned from his injury to the perceived failed urinalysis test.

Due to the lack of response, ultimately Mr. Swain reported to the emergency room at Southern Hills Medical Center on February 21, 2015. (Ex. 1 at 2-7.) He complained primarily of left-elbow pain and swelling, and, "The Patient reports falling at work on Jan. 8, and landing on his left elbow. . . . He denies any other pain or injury to other areas." *Id.* at 2. Dr. Brian Lindsey, D.O. diagnosed olecranon bursitis of the left elbow and elbow injury and released Mr. Swain. *Id.* at 5. Notes from that visit do not causally connect the work accident and the elbow injury, nor do they mention a left-knee injury or place work restrictions upon Mr. Swain.

---

[4] Considerable testimony revolved around the sequence of events between Mr. Swain's fall and his appearance for drug testing, specifically whether Mr. Swain worked for a while before heading to testing or whether he traveled back and forth between the plant and Concentra. Likewise, the parties disputed at the hearing whether Mr. Swain walked with a limp prior to the fall at work. None of this is relevant to the Court's decision. However the Court finds Mr. Swain to be more credible regarding the post-fall sequence of events.

3

According to additional medical records, Mr. Swain returned to Southern Hills the next day, February 22, 2015, where he was admitted and remained until February 26, 2015, for treatment of an unrelated medical condition. (Ex. 1 at 8-29.) The treatment notes from a variety of caregivers for that stay do not mention a fall at work, nor are there statements relating treatment to a work-related incident or work restrictions. Mr. Swain offered no explanation for this lack of mention in those records and acknowledged their content.

Evidence of additional medical treatment related to the fall next appears when Mr. Swain returned to Southern Hills on June 1, 2015. (Ex. 1 at 30-35.) Records from that visit state, "PT FELL AT WORK ON 1/9/15 ONTO THE STAIRS AT WORK SLIPPING ON SOME LIQUID, PT WAS NOT SEEN INITIALLY FOR INJURIES, PT IS HERE TODAY C/O LOWER BACK PAIN, LEFT KNEE PAIN[.] . . . NO RECENT INJURY." *Id.* at 30. (Capitalization in original.) The notes indicate Mr. Swain complained of left-elbow pain as well. *Id.* Dr. Colin Meyerowitz's "impression" was "Tricompatmental degenerative changes of the LEFT knee, without evidence of fracture or destructive osseous lesion." *Id.* at 32.

Mr. Swain did not introduce into evidence statements relative to treatment he received on February 21, 2016, or June 1, 2016, for the alleged work-related injury. Mr. Swain testified he still experiences pain from the injuries and is unable to maintain employment due to the pain.

Mr. Swain filed a Petition for Benefit Determination. (T.R. 1.) The parties failed to reach an agreement, and the mediating specialist certified the matter to the Court. *See* T.R. 2. Mr. Swain filed a Request for Expedited Hearing (T.R. 3), and the Court heard this matter on March 23, 2016.

At the expedited hearing, Mr. Swain asserted he would not have contacted Mr. Reeder immediately following the fall if he were not injured and in pain; rather, he would have simply gotten up and returned to work. Mr. Swain argued he sustained an injury by accident arising primarily out of and in the course and scope of employment when he slipped and fell at Standard while performing his job duties.

Standard countered that, while it is undisputed that Mr. Swain slipped and fell at work, he is not entitled to workers' compensation benefits because he did not satisfy his burden to show he was injured from the fall. Standard argued it relied on Mr. Swain's assertions that he was unhurt from the fall, and therefore it was not required to provide a panel. Further, Standard contended Mr. Swain failed to give timely notice of his injuries. Standard asserted Mr. Swain's claim fails with regard to causation because he introduced no medical proof casually relating the fall at work and his injuries. Finally, no providers placed Mr. Swain under work restrictions, thereby extinguishing his claim for past temporary disability benefits.

4

## Findings of Fact and Conclusions of Law

In order to grant or deny Mr. Swain's requested relief, the Court must apply the following legal principles. Mr. Swain bears the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Mr. Swain need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, at an expedited hearing, Mr. Swain has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

If Mr. Swain offers the appropriate proof mentioned above, Standard shall furnish, free of charge to Mr. Swain, such medical treatment made reasonably necessary by the accident. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). If Mr. Swain has suffered an injury and expressed a need for medical care, Standard shall designate a group of three or more physicians from which Mr. Swain shall select one to be the treating physician. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015).

*Notice*

As an initial matter, Standard asserted Mr. Swain failed to give adequate notice. The controlling statute, Tennessee Code Annotated section 50-6-201, provides in pertinent part:

(a)(1) Every injured employee or the injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation that may have accrued under this chapter, from the date of the accident to the giving of notice, unless it can be shown that the employer had actual knowledge of the accident. No compensation shall be payable under this chapter, unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the

5

notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

In *Hosford v. Red Rover Preschool,* No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014), the Appeals Board explained:

> The notice requirement contained in section 50-6-201 "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Jones v. Sterling Last Corp.,* 962 S.W.2d 469, 471 (Tenn. 1998). Consequently, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law." *Bogus v. Manpower Temp. Serv.,* 823 S.W.2d 544, 546 (Tenn. 1992). When lack of notice is raised as a defense, the burden is on the employee to show that notice was given, the employer had actual notice, or the failure to give notice was reasonable under the circumstances. Tenn. Code Ann. § 50-6-201(a)(1) (2014); *Jones,* 962 S.W.2d at 472.

Applying these principles, the Court finds that Standard received actual notice of Mr. Swain's fall and resulting injuries when Mr. Swain spoke with Mr. Reeder immediately following the fall. Mr. Swain credibly testified he told Mr. Reeder he slipped and fell, hurting his knee and shoulder, and that he felt a "zing" go through his body similar to when he participated in sports twenty or thirty years ago.

Standard based its notice argument on *Bryson v. Herb Ferrell & Sons, Inc., et al.,* No. 02S01-9509-CV-00082, 1996 Tenn. LEXIS 192 (Tenn. Workers' Comp. Panel Mar. 26, 1996). Standard argued an employer's knowledge of an accident without an expression of injury is not valid notice. (T.R. 5.) In *Bryson,* the Special Workers' Compensation Panel affirmed a trial court's dismissal for failure to give notice of an injury, although the employee gave notice of an incident. Specifically, the employee gave notice he was involved in an automobile accident while working. *Id.* at *4. The employee testified he also told his supervisor and a company vice-president he was injured from the accident, which assertions they denied. *Id.* at *4-5. The trial judge weighed the witnesses' credibility, and concluded the employee did not give notice of sustaining injuries in the accident. *Id.* at *3.

The Court notes that *Bryson* is unpublished and therefore of persuasive value only. Further, the Court is not entirely convinced it stands for the proposition that employees must convey notice of an incident *and* resulting injuries. Rather, the trial and appellate courts in *Bryson* focused on the parties' credibility in reaching their determinations. Thus, in the case at bar, the Court likewise weighs the credibility of the witnesses and finds Mr. Swain's version of conversations with Mr. Reeder and Mr. Kessler more

credible. Therefore, Mr. Swain satisfied his burden to show Standard had actual notice of the workplace accident and his resulting injuries.

*Causation*

Standard next asserts Mr. Swain failed to produce sufficient evidence to show he is likely to prevail on the issue of causation regarding his alleged work-related injuries. In order to establish causation, Mr. Swain must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony. *Id.*

In this instance, Standard argued, and the Court agrees, that Mr. Swain failed to produce any expert medical evidence linking his elbow and knee pain to employment with Standard, other than recitations within the medical records of the histories he gave providers. As a result, Mr. Swain offered insufficient evidence to establish he is likely to prevail on the issue of compensability.

However, Mr. Swain does not have to prove compensability to establish Standard's obligation to provide a panel of physicians from which he may choose an authorized physician. *McCord, supra,* at *16-17. In *McCord*, the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her *burden at this interlocutory stage* to support an Order compelling Employer to provide a panel of physicians.

*Id.* at *17 (emphasis added). Thus, the question becomes whether Mr. Swain has provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he is entitled to a panel of physicians. *Id.*[5]

---

[5] Mr. Swain checked the box indicating he sought temporary disability benefits only on the Petition for Benefit Determination. However, the Dispute Certification Notice lists additionally "Medical Benefits" as an issue on page one, but does not list Mr. Swain's entitlement to a panel of physicians as an issue for resolution for page two. The Appeals Board recently held, "To determine what issues have been certified by the mediator in the dispute certification notice as contemplated in section 50-6-239(b), it is necessary to consider the document as a whole without reading its components in a vacuum." *Phillips v. Carolina Constr. Solutions, et al.,* No. 2015-01-0208, 2016 TN Wrk. Comp. App. Bd. LEXIS 10, at *19 (Tenn. Workers' Comp. App. Bd. Feb. 26, 2016). Standard did not question whether the issue was properly before the Court during the expedited hearing, and therefore waived any

Standard does not contest whether Mr. Swain slipped and fell while performing his job duties. Mr. Swain contended he made multiple efforts to contact Standard in an attempt to secure medical treatment. Mr. Kessler and Mr. Reeder denied Mr. Swain attempted to contact Standard after his termination. The Court again weighs the witnesses' credibility and finds that Mr. Swain left messages with Standard regarding his injuries after his termination. Therefore, the Court finds Mr. Swain provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he is entitled to a panel of physicians. As a result, Standard is ordered to provide a panel of physicians within Mr. Swain's community from which Mr. Swain may choose an authorized physician for evaluation, and if necessary, treatment of his alleged knee and elbow injuries in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015).

The Court is unable to grant any other relief to Mr. Swain at this time. With regard to past medical expenses, Mr. Swain acknowledged he failed to introduce evidence of reasonable and necessary care, namely, the medical bills. As for Mr. Swain's request for past disability benefits, no medical records in evidence document the extent of Mr. Swain's disability or its duration. *See generally Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015).

Finally, it is apparent to this Court that Mr. Swain seeks a ruling regarding whether Standard improperly terminated him. This Court has no authority to make such a finding because it is limited to the remedies available under the Tennessee Workers' Compensation Law.

**IT IS, THEREFORE, ORDERED** as follows:

1. Standard shall provide a panel of physicians from which he may choose an authorized physician for evaluation, and if necessary, treatment of his alleged knee and elbow injuries in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015).

2. Mr. Swain's requests for temporary disability benefits and reimbursement of medical expenses are denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on May 23, 2016, at 8:45 a.m.

---

objection on this basis. Along these lines, although the Dispute Certification Notice states that Standard raised the intoxication affirmative defense and considerable testimony at the expedited hearing centered around the drug test attempt, Standard did not argue the applicability of the defense at the hearing. The Court likewise considers it waived.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 4th day of April, 2016.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

<u>Exhibits:</u>

1. Medical Records of Kenneth Swain
2. Affidavit of Kenneth Swain
3. First Report of Injury, July 7, 2015
4. Form C-41, Wage Statement, July 8, 2015
5. Resume of Kenneth Swain
6. Video surveillance of the fall
7. Standard Candy Company Incident Report, January 7, 2015
8. Email from Steven Reeder to John Kessler, January 8, 2015
9. Kenneth Swain LinkedIn Profile

<u>Technical record:</u>[6]
1. Petition for Benefit Determination, June 17, 2015
2. Dispute Certification Notice, August 14, 2015
3. Request for Expedited Hearing, December 30, 2015
4. Standard's position statement. January 21, 2016
5. Employer's Pre-Hearing Brief, March 9, 2016 (Includes Employer's Proposed Exhibits)
6. Standard's post-hearing email to the Court; *Bryson v. Herb Ferrell and Sons, Inc.*

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the expedited hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Kenneth Swain, self-represented | X | | X | swainkenneth@ymail.com; 221 Margo Lane, Nashville, TN 37211 |
| David Drobny, Employer's attorney | | | X | ddrobny@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov